[Civ. No. 7729. First Appellate District, Division Two.—March 30, 1931.]

LOUIS H. JACKSON, Respondent, v. THE GABLES (a Corporation) et al., Appellants.

Mitchell, Silberberg & Davis for Appellants.

William G. Bryce for Respondent.

PARKER, J., *pro tem.*—This is an appeal by certain defendants from a judgment rendered against them in an

action, the nature of which will hereinafter appear. The appeal comes before us on the judgment-roll alone. The nature of the case will appear from the findings of fact and these said findings controlling, as they must, the judgment will be determinative of the appeal. The Gables is a corporation regularly organized and existing, with its principal place of business at Los Angeles. More than seventy-five per cent of the capital stock of said corporation is owned by the defendants Cohen, Saunders and Crawford. These defendants were the directors of the corporation at all times covered by the pleadings, the two first named being president and secretary, respectively. It seems that this corporation owned and controlled and operated what was by it designated as a club, though not in the sense that the term is generally used. The name of the club was "The Gables". This club was not a social organization, the affairs of which were directed, in any sense, by the members, but was more in the nature of an invitational hotel or rendezvous for those who might comply with the terms of the corporation. Speaking more or less loosely, but descriptive to some degree of accuracy, the idea was to operate an institution for the exclusive use of selected patrons to the end that the conceit of a private club might be indulged. The corporation did not issue stock to its members, but did issue to them a license to use the property and facilities of the club upon payment of certain stipulated membership fees in accord with the rules and regulations of the club and the club was managed and operated under the direction and control solely of the board of directors in the manner in which said board might determine. The corporation was at all times the owner of the clubhouse at Santa Monica and was in possession and active operation of the said club. The actual operation of the club was carried on by the board of directors, employees, agents and servants of The Gables, the said employees being partially under the direction and control of the board of directors and partially under the personal direction of Cohen, Saunders and Crawford and one Tyler, the latter being the manager of the club. About March, 1926, the plaintiff was solicited to become a member and thereafter made application for life membership in the club. He made the payments required, part in cash and part by note, aggregating the sum of $500. Incidentally, the note

was subsequently paid. He was given a card indicating life membership, was given keys, and his name was printed in the roster of membership, and he was urged to solicit new members. The specific finding of the court is as follows, with respect to plaintiff's application: "The court finds that plaintiff complied with all of the by-laws but that the defendants Cohen, Saunders and Crawford did not function in accordance with the by-laws of The Gables governing the board of directors, of which they composed the membership of said board, but were lax, negligent and careless in their duties in such capacity and exercised authority as individuals under the guise of being directors of said club." In any event, in addition to the giving of the keys and the publication of the name in the roster, plaintiff held himself out to members of his family and to friends and business associates as a life member of the club and entertained members of his family and friends and business associates at the clubhouse with the knowledge and consent of the officers of The Gables, to whom the management of the club was entrusted by the board of directors, which board of directors were the owners of more than seventy-five per cent of the capital stock of the corporation. The court finds as follows: "That some of these things were done by officers and employees of The Gables, with the knowledge and consent of the officers and members of the board of directors of The Gables and some were done by said directors and managers, as individuals, knowingly and intentionally." The application for membership, · hereinbefore referred to, was not formally acted upon by the directors by reason of the individual negligence and carelessness of Cohen, Saunders and Crawford, but at a special meeting of the board of directors, supposedly to be held on June 30, 1926, Cohen, Saunders and Crawford did knowingly, wilfully and intentionally and under the guise of the board of directors of The Gables, attempt to pass a valid resolution rejecting the application of the plaintiff for life membership. The directors thereafter notified plaintiff of his rejection and made various offers of restoration, none of which, it may be conceded, conformed to the requirements of a tender. Again, quoting *verbatim* the findings: "That by its actions The Gables accepted the application of plaintiff for life membership and entered into a contractual obligation with plaintiff

to give plaintiff all of the rights and privileges accorded to other life members under the rules and regulations.'' On July 30, 1926, the plaintiff went to the clubhouse with a prospective purchaser of certain property owned by plaintiff, the purpose of the visit, as the court finds, being to consummate a transaction for the sale of the said property. Here again we take the findings *verbatim:* That on said occasion plaintiff was notified by the defendant Morgan S. Tyler and other defendants, in a boisterous and ungentlemanly way, that The Gables refused to accord plaintiff the privileges of the club, and refused to accord him the privileges to which he, as a life member, was entitled under the rules and regulations, and that he, the said Morgan S. Tyler, individually ordered plaintiff from the clubhouse in a loud and vulgar tone of voice within the hearing of other persons in the clubhouse, and plaintiff was insulted, humiliated and ridiculed in the presence of his guest, and that the plaintiff suffered damage thereby, on said occasion on July 30, 1926. The court then specifically finds that plaintiff was not damaged by reason of the loss of the contemplated sale and finds also that it is not true that plaintiff has lost business or suffered in his income, or been damaged by the injury to his business by reason of the refusal of The Gables to accord him the privileges of the club or by reason of any act of The Gables or any of the defendants. The court, however, does find as follows: That it is true that plaintiff and plaintiff's wife suffered humiliation and damage by reason of cancellation of invitation to guests to dine at and visit The Gables Club. That it is true that plaintiff's wife left the home of plaintiff to avoid the publicity, ridicule and humiliation of facing friends and the public by reason of the failure of The Gables to accord plaintiff the privileges of life membership in The Gables Club, and by reason of the actions of The Gables and of the other defendants and that plaintiff's wife remained away from plaintff's home and would not associate with plaintiff by reason of the refusal of defendants, and each of them, to accord plaintiff the rights and privileges of life membership in The Gables Club, and by reason of the actions of The Gables and of the other defendants plaintiff was deprived of the right of his wife's company and her services by reason of said act and/or acts of The Gables and the other defendants. Then

follows the general finding that plaintiff has been damaged in the sum of $1500 and is entitled to seven per cent per annum interest on $500 thereof from July 30, 1926, until judgment is entered. The foregoing passages are taken directly from the findings of the trial court and, while some portions reflect specific findings in *verbatim,* the remainder is an accurate synopsis of the findings as the same appear before us. From these findings the court drew its conclusions of law. These are few in number and comparatively brief. The court concluded that the action of The Gables constituted an acceptance of an application of plaintiff for life membership in the club operated by The Gables and The Gables thereby entered into a contract with plaintiff to accord him the rights and privileges of a life member. It also drew the conclusion: ''That The Gables is a corporation of which more than seventy-five per cent of the capital stock was owned individually by Cohen, who acted as one of the board of directors of said Gables Club, through whose instrumentality said board of directors conducted the affairs of the club under the name and guise of club memberships in The Gables, for their own private gain and purpose and were the beneficiaries from the funds paid in for membership fees by the plaintiff for the privileges afforded under the rules and regulations of said club, and said board of directors were lax, negligent and careless in not conducting the affairs of said club in accordance with the by-laws, rules and regulations of said club. That the notice of the rejection of plaintiff's application and refusal to accord plaintiff the rights and privileges of a life member, constituted a breach of the contract and amounted to a cancellation of the membership without compliance with the provisions of the rules and regulations on the subject of cancellation of memberships. That plaintiff is entitled to judgment against the defendants, The Gables, a corporation, J. Ward Cohen, Edward Charles Saunders, James Crawford and Morgan S. Tyler, and each of them, in the sum of one thousand five hundred dollars, with interest at 7% per annum from July 30, 1926, until the entry of judgment on the sum of $500, as a part of said judgment.'' Judgment was entered accordingly and it is from the judgment so entered that defendants prosecute the appeal.

■ We have gone into the foregoing detail, urged by the very necessity of the case, in order to demonstrate the complete unintelligibility of the findings of fact and conclusions of law upon which rest the judgment. It cannot be determined upon what theory, either of law or fact, the judgment followed. The underlying basis of the judgment, as indicated both in the findings and in the conclusions of law predicated thereon, seems to be that a certain contract between plaintiff and the corporation was violated. This breach of contract consisted in the refusal of the corporation to render to plaintiff the privileges due him as a member of a so-called club operated by it. From this viewpoint, plaintiff was entitled to recover only such an amount, as damages, as would compensate him for all the detriment proximately caused thereby, or which, in the ordinary course of things would be likely to result therefrom. (Civ. Code, sec. 3300.) No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin. (Civ. Code, sec. 3301.) And the facts here found do not indicate damages of that nature. Notwithstanding all of the actions of the defendants who constitute the board of directors of the corporation, however they may be characterized in the findings with respect to the admission of the plaintiff into the club, no damage could have resulted to plaintiff thereby. The alleged and found purpose of the activities of these individuals was to refuse admission to the plaintiff, which purpose was not accomplished in that the court finds that the plaintiff was admitted to membership and accorded the usual privileges of the club. The apparent holding of the trial court was that plaintiff became a member of the club, not by reason of express action on the part of the directorate, but through failure of the said controlling authority to function. And this is apparent from the finding that no formal action was ever taken upon plaintiff's application by the board of directors by reason of the individual negligence of the members of said board. But the court then finds that these same directors did knowingly, wilfully and intentionally, under the guise of the board of directors, attempt to pass a valid resolution rejecting plaintiff's application for membership. Likewise the trial court, throughout its findings, stresses the fact that these directors did not function in

accordance with the by-laws, but were lax, negligent and careless in their duties in such capacity, and exercised authority as individuals under the guise of being directors. The court therefore bases its finding on the existence of a contract on the actions of the parties. It found that a membership card was issued to plaintiff, a key given him, and account opened. That his name was published in a roster of members and that he was solicited to bring in others of the elect who might be found worthy. Yet the court finds the fact to be that some of these things were done by officers and employees, with the knowledge and consent of the officers and the members of the board of directors and some were done by said directors and manager, as individuals, knowingly and intentionally. So it seems apparent from the foregoing that there is no specific finding, nor any finding from which such inference may be drawn, that plaintiff ever did become a member of the so-called club or that the corporation owed him any service whatsoever. And it must follow that any rights plaintiff had or could claim to have on the premises described as the clubhouse were by virtue of his election to membership. If, as is found, the directors and employees of the clubhouse, acting entirely without their functions, and individually, deceived the plaintiff into believing that he was a member of the club, in violation of the corporation's by-laws and regulations, it seems too plain for citation that no responsibility under these findings would rest upon the corporation. Respondent urges that the contract is merely by way of inducement and that the action is in fact and effect an action in tort. This would hardly be true as against the corporation whose initial liability must rest upon the alleged contract.

However, we may consider the action as one in tort. Assuming that plaintiff was a life member of the club, the only overt act alleged or found by the court was that on July 30th when plaintiff presented himself at the clubhouse the defendant Tyler, neither an officer nor director in the corporation, and other defendants not designated nor described, in a boisterous and ungentlemanly manner notified plaintiff that The Gables refused to accord plaintiff the privileges of the club and refused to accord him the privileges to which he as a life member was entitled. There is

no finding as to what those privileges were or were claimed to be, and nothing to indicate what acts or words would support the conclusion, to wit, "in a boisterous and ungentlemanly manner". And further embraced in this one occasion of July 30th is the finding that Morgan S. Tyler, individually, ordered plaintiff from the clubhouse in a loud and vulgar tone of voice and plaintiff was insulted, ridiculed and humiliated in the presence of his guest. And here it is interesting to identify the said Tyler. He is found to be the manager of the clubhouse operated by The Gables and took orders from each of the directors in their individual capacity and knowingly and wilfully enforced the same under the guise of his authority as manager. Such a finding means absolutely nothing. The further finding in relation to the alleged tort is that, some weeks before the alleged wrong, the directors, acting "under the guise of their directorship", notified plaintiff that he was not a member and with this notification an attempt was made to return to him the moneys paid, which plaintiff refused. The findings as to damage are equally confusing. ▪The court found that plaintiff was humiliated and also that he suffered damage thereby; also that his wife was humiliated and that because the family friends ridiculed plaintiff on account of this club refusing him service the wife left plaintiff and refused to further abide with or serve him; also that plaintiff's wife refused to return to plaintiff's home and would not associate with him by refusal of the defendants, and each of them, to accord the plaintiff the rights and privileges to which he was entitled by reason of his membership. Surely this could not be an anticipated damage that could arise from a mere breach of the contract nor could it be a damage flowing from the alleged injury. If the exclusion of plaintiff from this club brought upon him the ridicule of his friends it would, in the ordinary course of events, be presumed that the marital bond would be tightened and that the wife's obligation to cleave only unto him for better or for worse would reach its highest fulfillment. A claim of this sort on account of the acts found can find no support in law or reason, and with the nondescript relationship of Tyler to the corporation or to the other defendants, even if the former could be held liable for these damages, the latter could not.

Summing up, it appears that the court found that the moneys received by the directors were paid to and retained by the corporation, totaling $500, regardless of the contract. It is not claimed that the directors are liable for the return thereof, but the defendant corporation, called The Gables, as one of the appellants, concedes its liability for the return of this money. The findings as to damages are not segregated so as to disclose the amount of damage imputed to each alleged injury. It is impossible to determine from the findings what amount of damage is allowed by reason of the loss of the wife's companionship and service or for either and what amount allowed as compensation for the indignity suffered with the accompanying humiliation and ridicule of the friends of plaintiff. A somewhat similar situation will be found in the case of *Hullinger* v. *Big Sespe Oil Co.,* 28 Cal. App. 69 [151 Pac. 369], wherein it was held that the findings as to the different elements of damage were too uncertain and indefinite to support the judgment and it was the conclusion of the reviewing court that for such reason alone the judgment could not stand. This is particularly true here for the reason that the damages found to have accrued to plaintiff on account of the loss of wife's consortium and service was, in no event, a proper element of damage. It is not for us to determine what might have been in the mind of the trial court and having thus determined adjust the items in accord therewith; much less would it be the function of this court to attempt an independent segregation. We have gone rather exhaustively into the record before us, not because we felt that plaintiff has presented or has made a case worthy of profound consideration, but solely because we are mindful of the rule and policy which leans toward the upholding of a trial court's findings and judgment whenever the record will permit. We have searched in vain for any substantial ground of reasoning from which we might declare the judgment before us to have even the semblance of a basis that might sustain it. There are no compelling features demanding that plaintiff have relief; nor are there any clear facts indicating his great injury. It might be barely possible, from the claims of plaintiff, that he might have better contended that his ancestral line had become attained by reason of the fact that this camouflaged arbiter

of the elegance of the locality had taken from him the nobility which membership in this ultra select commercial organization might have implied. The findings amply disclose that plaintiff was notified by those found to be in full charge of the club and its affairs that his membership had been canceled and efforts were being made to refund plaintiff the money he had paid. In the face of this and with an advance knowledge that those in charge disputed his right the plaintiff took with him a witness and went to the club premises, obviously for the purpose of establishing a basis for just such an action as this. It is clear that he deliberately sought to build up a cause of action and while it is possible that a cause of action may be constructed in this way, yet when the artifice appears it must be of such skilfulness to withstand scrutiny and attack. It might be noted, however, that an apparent injustice results from reversing the judgment *in toto*. Sufficient appears from the findings to indicate that the defendant, The Gables, a corporation, has received and now retains the sum of $500, paid by plaintiff as a membership fee. This membership has been denied plaintiff. Defendant corporation concedes its liability to plaintiff in that amount. Therefore it is the conclusion of this court that the judgment be reversed as to all of the defendants save and except defendant The Gables, a corporation. That as to this defendant corporation the judgment be modified and reduced to the sum of $500, with interest from July 30, 1926; appellants and each of them, including the corporation, to recover costs on this appeal.

Spence, Acting P. J., and Sturtevant, J., concurred.