[Civ. No. 24004.   Second Dist., Div. Two.   Nov. 12, 1959.]

HENRY H. HAYDEN, Respondent, v. SECURITY HOMES ESTATE (a Cooperative Corporation) et al., Appellants.

Arthur E. Briggs for Appellants.

Richard T. Sykes for Respondent.

FOX, P. J.—This appeal represents the latest chapter in a long legal struggle between two opposing groups of the members of Security Homes Estate, hereinafter referred to as Security Homes, a cooperative corporation. Plaintiff brought this action for an "accounting and moneys due." From a judgment in his favor, defendants have appealed.

Security Homes was incorporated in September, 1944. It was contemplated that the corporation would buy land which would be subdivided into homesites and small farms and developed for the use and occupancy of its members on a cooperative basis. To that end, the corporation purchased a 462-acre tract of land in San Fernando Valley for $100,000. The initial payment consisted of $4,000 furnished by the members, and $21,000 of borrowed money. The balance of $75,000 was secured by a deed of trust. The $21,000 obligation was guaranteed by certain of the members. When the $21,000 note became due in May, 1945, the corporation was unable to pay it. However, it was extended by the lender to September 1, 1945, in order to give the corporation time to raise the money. Because of the financial difficulties of the corporation, various proposals were made from time to time to sell some or all of the land in order to meet its immediate indebtedness. In September, 1945, one Ned Ross made an offer to purchase the entire tract at a price of $175,000 on the following basis: that he would assume the $100,000 obligation on the property owed by Security Homes, and also the $21,000 loan; pay $10,000 in cash, and the balance of $65,000 in 10 annual payments. This offer was accepted by Security Homes. It was asserted by certain members of Security Homes, however, that the board had rejected another and more favorable offer. It was at this time that the membership became divided into two groups, one of which was headed by plaintiff herein, and the other by Arthur E. Briggs. On November 8, 1945, a suit was filed in the name of Security Homes Estate for declaratory relief and to enjoin the proposed sale to Ross. In this suit it was charged, *inter alia*, that the board of directors had rejected a more advantageous offer for the purchase of the land in question and was endeavoring, without authority, to sell it to Ross. A few days thereafter, Ross filed an action against Security Homes for specific performance. The two

actions were consolidated for trial and a consolidated judgment was rendered in favor of Ross on his specific performance action and sustaining the authority of the board of directors of Security Homes to make the sale. No appeal was taken from this judgment.

On December 19, 1945, while this litigation was pending, the board of directors recommended the expulsion from membership of Hayden and eight other members, who made up the so-called Hayden group. This action on the part of the board was taken pursuant to section 6 of article IV of the by-laws, which provides for expulsion from membership. The board based its action on the ground that the nine members involved were "judged by the Board to be acting contrary to the interests of the Association." The motion further provided that "their shares of stock be repurchased at a price not to exceed the par value of said shares less the indebtedness to Security Homes. . . ." A membership meeting was called for January 20, 1946, to consider the proposed expulsion. Notice was given to plaintiff and the other members of his group. Hayden appeared at this meeting with a two-page document signed by himself and the other eight members whose expulsion had been recommended. They protested their expulsion upon various grounds. Although the document was filed with the secretary, it was not read at the membership meeting. Thereafter a motion was passed approving the action of the board in dismissing Hayden and his associates. It does not appear, however, that any steps were taken to repurchase the shares of stock of Hayden and his group, as authorized by the by-laws and in accordance with the board's resolution of December 19, 1945, recommending expulsion of these members.

Plaintiff seeks to recover upon the basis of his asserted ownership of 16 membership shares. Only one of these shares was originally issued to him; the other 15 were assigned to him by the eight persons who were involved in the expulsion proceedings. These shares never had been transferred to plaintiff on the books of Security Homes.

The present action, filed in March, 1954, named Security Homes and its officers and directors as defendants. Plaintiff went to trial on the first cause of action of his second amended complaint "for accounting and moneys due." The allegations of this cause of action may be summarized as follows: Paragraph I alleges that Security Homes Estate is a "purported" cooperative corporation organized and existing under the

laws of this state; Paragraph II, that the individuals who are named as defendants were, at all times mentioned, the purported directors and officers of Security Homes; Paragraph III, that Hayden is the owner of 16 shares of said corporation, and that he is the "owner of more than ten per cent (10%) of the outstanding shares in said corporation"; Paragraph IV, that he caused to be served upon the corporation and its directors a demand in writing to examine the records of "the defendant corporation and the records and minutes of the directors of said corporation" in accordance with the provisions of section 3003 of the Corporations Code; Paragraph V, that the first written demand to examine the records of said corporation was served on Charles L. Beatley on December 22, 1953, and that the other defendants were served with copies of said demand at various dates thereafter; Paragraph VI, that the defendants have neglected and refused and still refuse to render an accounting or to permit him "to examine any of the records or minutes of the directors" of the said corporation; Paragraph VII, that since he "acquired his alleged interest in said defendant corporation, the corporation has engaged in the business of buying and selling real property and other enterprises unknown to the plaintiff and that substantial profits have resulted therefrom; that said profits, or any portion thereof, have not been accounted for or distributed to the plaintiff, or his assignors"; in Paragraph VIII, plaintiff quotes section 13 of Article V of the by-laws of Security Homes, reading as follows: *"Distribution of Surplus Savings.*—At the end of each year or quarter year, after providing for the interest on share and loan capital and after providing for the funds which may have been created as provided in Art. V, Sec. 5, 11, and 12, the remainder of the surplus savings, if any, may be used collectively for social purposes, or may be divided according to the Rochdale method among the members as patronage refunds in proportion to the amount of their patronage of the business of the Association. Patronage refunds shall be paid in cash to shareholders who have not subscribed for additional shares, and shall be credited to the share capital subscription account of those members who have not completed payments on their share subscriptions or who are otherwise indebted to the Association."

Plaintiff prays (1) for an accounting and an order distributing to him any moneys found to be due him from his ownership of shares in Security Homes; (2) that the court award him as damages the sum of $1,000 from each of the

defendants for their willful refusal to comply with section 3011 of the Corporations Code; (3) for costs of suit; and (4) such other and further relief as to the court may seem equitable and just in the premises.

Defendants deny all the allegations of plaintiff's amended complaint except those contained in paragraphs II and VIII. They also allege three separate defenses: (1) that plaintiff had been expelled from the corporation on January 20, 1946, in accordance with the provisions of the by-laws of the corporation and that he is not entitled to exercise any of the rights or privileges of a member of said cooperative corporation; (2) the statute of limitations; and (3) that plaintiff does not own 10 per cent of the outstanding shares of the corporation and has not made a proper demand under section 3003, Corporations Code, for an inspection of the corporate books and records.

The court found all the allegations of plaintiff's first cause of action in his second amended complaint to be true. The court also found "[t]hat the said corporation after its inception and organization and issuance of share certificates and memberships was operated by the defendants herein inconsistent with its corporate charter and in violation of the interest of the plaintiff and his assignors. That the said corporation while in the control of the individual defendants herein, did abandon its corporate purpose as a cooperative corporation and operated solely as a profit seeking unit or organization in violation of its charter which declared it to be a non-profit organization. That the said corporation was controlled by the individual defendants hereinbefore named. . . . That said defendants, by reason of the above, were not and are not entitled to urge the rights, powers, privileges and immunities peculiar to a non-profit cooperative corporation to the financial detriment of plaintiff."

At the outset we are met with this question: Was plaintiff, under the allegations of his second amended complaint, entitled to introduce evidence, over appropriate objections by defendants, for the purpose of showing that Security Homes had abandoned its corporate purposes and was not entitled to be considered a corporate entity in this suit? We have concluded that this question must be answered in the negative.

Examination of plaintiff's amended complaint discloses that he is expressly and specifically seeking to assert and enforce rights which can exist only upon the basis that Se-

curity Homes is a corporation. First, plaintiff seeks "to examine the records of the defendant corporation and the records and minutes of the directors of said corporation" pursuant to the authority of section 3003 of the Corporations Code. To that end, he alleges he "is owner of more than ten per cent (10%) of the outstanding shares in said corporation," and that he has caused written demand for such inspection to be made upon the corporation and its officers. He then alleges that the defendants refused "to permit the plaintiff to examine any of the records or minutes of the directors of the corporation." These allegations make it unmistakably clear that plaintiff is here alleging and seeking to enforce a right that can only exist on the theory that Security Homes is a corporation. Furthermore, in his prayer, plaintiff prays that he be awarded damages of $1,000 from each of the defendants for their asserted failure to comply with section 3011 of the Corporations Code, which relates to furnishing stockholders with a statement of the corporate affairs.[1] In addition, plaintiff bases his right to any financial recovery in this action on a by-law of the corporation. He alleges that the corporation has made substantial profits and that none of said profits have been distributed to him. As his sole basis for being entitled to a portion of such profits, plaintiff quotes section 13 of article V (Distribution of Surplus Savings, quoted above) of the by-laws of the corporation. Thus, by his pleadings, plaintiff bases his right to recovery upon the corporate existence of Security Homes and the applicability of one of its by-laws.

Plaintiff neither alleges that Security Homes was not legally organized nor that it has since forfeited or otherwise lost its character or abandoned its rights to do business as a cooperative corporation. He does, however, refer to Security Homes in paragraphs I and II of his amended complaint as "a purported cooperative corporation," but designating the corporation as "purported" means nothing as a pleading. It is obviously a conclusion and violates the first fundamental principle of code pleading — that facts must be alleged. Furthermore, having asserted rights in his amended complaint, as we have pointed out, that are based on the thesis that Security Homes is a cooperative corporation, plaintiff is estopped to assert the contrary in his pleading. There is there-

---

[1] This portion of the prayer is apparently based on plaintiff's second cause of action, which was stricken.

fore no issue made by plaintiff's amended complaint as to the corporate status of Security Homes. It follows that evidence on this question was not admissible over appropriate objections on behalf of defendants. Examination of the record discloses such objections were made and overruled soon after the trial started but permitted to stand throughout the trial. There was clearly no waiver by the defendants. Hence the findings that Security Homes had abandoned its corporate purpose and that it was not entitled to be treated as a corporate entity are outside the issues and unsupported by any competent evidence.

We come now to this question: Is plaintiff entitled to a money judgment[2] under his pleadings and the evidence? The answer to this question is simple and in the negative. By his amended complaint plaintiff bases his right to any financial recovery on section 13 of article V of the by-laws (quoted above), which deals with the distribution of surplus savings. Examination of this by-law reveals that surplus savings, remaining after certain specified requirements are met, may be divided among the members in proportion to the amount of their patronage of the business of the association. Plaintiff neither alleged nor proved that Security Homes had received any patronage from him. It is thus clear that plaintiff has failed to bring himself within the provisions of the by-law on which he relies. Hence he is not entitled to any recovery.

We shall now direct our attention to defendants' argument that Hayden is not entitled to maintain this suit on the theory that he had been expelled from membership in Security Homes. Plaintiff alleged his membership, which the defendants denied. They also affirmatively alleged that he had been expelled in 1946. Thus, issue was joined on plaintiff's membership status. The trial court found in favor of plaintiff on this question. The evidence abundantly supports the finding. In this connection, the by-laws (art. V, § 6) provide in part as follows: The board of directors ". . . shall have the right to dismiss and to repurchase the shares of any member who has been judged by the Board to be acting contrary to the interests of the Association,—*Provided however*, that said member has had the opportunity to appear in his own defense before the next regular or special membership

---

[2]The court granted plaintiff the right to examine the books and records of Security Homes. During the trial plaintiff abandoned his claim for damages for defendants' asserted refusal to furnish a statement of the corporation's affairs.

meeting of the Association and the Board has been sustained in its action by a majority vote of the members present at such membership meeting." Apparently relying on this by-law, the board of directors, on December 19, 1945, passed a resolution dismissing Hayden and associates from membership "on the grounds and for the reason that they have been judged by the Board of Directors to have been acting contrary to the interests of Security Homes Estate, and that their shares of stock be repurchased at a price not to exceed the par value of said shares less the indebtedness to Security Homes Estate . . ." Thereafter, on January 20, 1946, a meeting of the members was held at which this resolution was presented for approval or disapproval. Hayden and his associates were notified of this meeting and its purpose. Hayden appeared on behalf of himself and associates and presented a document protesting the action of the board and embodying their defense to the board's action. By a vote of the membership it was determined that this document should not be read at the meeting. Furthermore, there is testimony by Hayden that the document had not been circulated to the membership prior to the meeting. The membership, however, approved the action of the board. Although the resolution of dismissal or expulsion provided for the repurchase of the shares of the expelled members, no repurchase was ever made, nor was any valid tender made therefor. It is thus apparent that in attempting to expel Hayden and his associates the defendants failed to comply with the by-laws of Security Homes and the resolution of the board regarding the repurchase of their shares, and that the membership did not afford Hayden a fair, or any, hearing. These facts and circumstances amply support the trial court's declaration to the effect that the attempted expulsion of Hayden and his associates was ineffective and that they were still members. (*Swital* v. *Real Estate Commissioner*, 116 Cal.App.2d 677, 679-680 [254 P.2d 587] ; *Stein* v. *Marks*, 89 N.Y.S. 921.)

█  Although mandamus is the proper remedy for reinstatement (*Smetherham* v. *Laundry Workers' Union*, 44 Cal. App.2d 131 [111 P.2d 948]) this is a suit in equity for an accounting. █  Plaintiff alleged his status as a member and shareholder. Defendants denied this allegation and affirmatively alleged that plaintiff had been expelled. Thus the issue of plaintiff's membership was squarely presented as a necessary incident to a determination of the main issue of an accounting. Under these circumstances the court was justified

in determining this issue and declaring that plaintiff and his associates were still members. (*Westbrook* v. *Social Center Hall Assn.*, 148 Cal.App.2d 815 [307 P.2d 640].)

Defendants argue that plaintiff is not entitled to any relief on the theory that he was expelled and that any cause of action for reinstatement and the assertion of membership rights is barred by the statute of limitations and laches. However, defendants misconceive the procedural posture of this case. As previously noted, this is not an action for reinstatement. The issue of expulsion was raised by defendants as an affirmative defense. Plaintiff was not required in his pleadings to anticipate this defense. (*Taboada* v. *Sociedad Espanola etc. Mutua*, 191 Cal. 187, 193 [215 P. 673, 27 A.L.R. 1508].) Furthermore, the court determined that plaintiff had never been effectively expelled. It is therefore apparent that the statute of limitations and laches have no application on this record.

Finally, it should be pointed out, with respect to the 15 shares assigned to plaintiff, that he did not establish that he acquired said shares in accordance with the by-laws of the corporation or that he had met the requirements of the by-laws as to their transfer. Section 9609, Corporations Code, provides that "[n]o member may transfer his membership or any right arising therefrom unless the Articles or by-laws so provide." It therefore follows that the by-laws provide the only method of transfer. In this regard, the first paragraph of section 6, Article V, provides that any shares offered for sale must first be offered to the corporation, which has the option to purchase them at par value or book value, whichever is less. The second paragraph reads as follows: "Transfer of the shares of this Association shall not be binding until made upon the books of the Association with the approval of the Board of Directors, and no transfer shall be completed until the old certificate has been endorsed and surrendered and a new certificate issued in the name of the purchaser." Since plaintiff did not show that he acquired the 15 shares in compliance with these by-laws he is not entitled to assert "any rights arising therefrom."

The judgment is reversed.

Ashburn, J., and Herndon, J., concurred.